HAROLD S. IRISH *et al. vs.* CORNELIUS B. COLLINS *et al.*

AUGUST 13, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

O'CONNELL, J.   This is a petition for a writ of certiorari brought by the members of the school committee of the town of Middletown in this state against the respondents in their capacity as the state board of education established under the provisions of public laws 1951, chapter 2752. The writ was issued and pursuant thereto the respondent board has returned all pertinent records to this court.

The petition seeks a review of the decision of said board of education reversing the decision of the school committee of said Middletown in dismissing S. Hayward Snell as superintendent of schools of said town.   In this opinion the state board of education will sometimes be referred to as the board, the commissioner of education as the commissioner, the school committee of Middletown as the committee, and S. Hayward Snell as the superintendent.

It appears from the record that S. Hayward Snell was employed by the committee as superintendent of schools for the school years 1946 to 1952 inclusive.   He was not re-engaged for the school year 1952-1953.   On May 8, 1952 the committee adopted a resolution dismissing the superintendent at the end of the then current school year.   On the

same date a written notice was mailed to the superintendent notifying him of his dismissal at the end of the school year and setting forth as the causes for such dismissal his failure to cooperate with the committee and that it was the opinion of the latter that higher standards in the administration of the schools could be achieved with someone other than Snell as superintendent.

The superintendent thereupon requested a public hearing before the committee. The request was granted and hearings were held on seven evenings, the last date being July 28, 1952. On August 4, 1952 the committee adopted the following resolution:

> "Voted that proceedings prescribed by law with reference to the dismissal of Superintendent Snell have been complied with;
>
> That the grounds for dismissal as stated in the notice to S. Hayward Snell dated May 8, 1952 are good and just cause for such dismissal;
>
> That such grounds for dismissal were proved by the evidence adduced at the hearing on said dismissal.
>
> Voted to adopt the following resolution:
>
> Whereas, the school committee has passed the above motion,
>
> Now therefore, be it resolved that S. Hayward Snell be and he hereby is dismissed as *superintendent* of schools of Middletown, Rhode Island, as of August 11, 1952." (italics ours)

From this order of dismissal the superintendent appealed to the commissioner, who took no further testimony. After arguments of counsel and a consideration of the evidence presented before the committee, he entered his decision sustaining the appeal and reversing the committee's decision. From the commissioner's decision the committee appealed to the state board of education and, after arguments of counsel and a review of the testimony taken before the committee, such board sustained the commissioner's decision. The petitioners have brought the instant petition to review this decision of the board.

It is to be noted that the superintendent's appeal from the committee's decision was predicated upon the theory and claim that he was an aggrieved person under the provisions of P. L. 1946, chap. 1775, commonly referred to as the teacher's tenure act. In their respective decisions the commissioner and the board expressly held that the superintendent was covered by, and entitled to the benefit of, the provisions of said act, and both decisions were based upon the language and provisions thereof.

The petitioners contend that the superintendent was not a person aggrieved under the teacher's tenure act, that the position of superintendent was not covered thereby, and that the commissioner and the board were wholly without jurisdiction to act upon such appeal. They contend further that if the commissioner and the board are held to have had jurisdiction in the first instance, they exceeded it in that they proceeded to hear the case as an appeal *de novo* instead of applying the ordinary certiorari rule. Such rule merely permits the appellate body to examine the record and ascertain therefrom whether there was legal evidence to sustain the finding or ruling appealed from. It does not permit such appellate body to weigh the evidence or pass upon the credibility of the witnesses.

The primary question presented to this court is whether a superintendent of schools, *qua superintendent,* is covered by the teacher's tenure act. If not, it will be unnecessary to determine the question of excess of jurisdiction involving the procedural questions stated above. We shall therefore consider first whether Snell, *as superintendent,* is a person aggrieved under P. L. 1946, chap. 1775. The first section thereof reads:

> "The term teacher as used in this section shall be deemed to mean every person for whose position a certificate issued by the state department of education is required by law."

It is contended that since a certificate is required to be

issued for every person occupying the position of superintendent, that a superintendent *as such* is included in this definition. This argument would appear at first blush to be quite plausible. However, the intent of the act must be determined not from one section thereof but from the whole act. The title of said chapter 1775 is: "An Act To Guarantee And To Improve The Education Of Children And Youth In This State By Providing *Continuing Teaching Service*." (italics ours)   Sections 2 and 3 thereof read as follows:

> "Sec. 2.   *Teaching service* shall be on the basis of an annual contract, except as hereinafter provided, and such contract shall be deemed to be *continuous* unless the governing body of the schools shall notify the *teacher* in writing (on or before March 1) that the contract for the ensuing year will not be renewed. (italics ours)
>
> Sec. 3.   Three successive annual contracts shall be considered *evidence of satisfactory teaching* and shall constitute a probationary period.   *Teachers* who have given satisfactory service for three years prior to the passage of this act, and therefore those who shall complete the probationary period, shall be considered in *continuing service*.   No such teacher shall be dismissed except for good and just cause." (italics ours)

It would thus appear that the meaning of the term "teacher" in section 1 must be read with other sections and that the tenure act was intended to apply only to those persons who are aptly described and referred to in the title of the act and are engaged in the particular activities referred to therein. A superintendent is not included by express terms nor by necessary implication. It is nowhere alleged here that the superintendent has actually had any teaching service, much less continuing teaching service, in this state. In any event he is claiming rights not as one actually teaching or in continuing service as a teacher in the ordinary acceptation of those terms but only in his capacity as a *superintendent,* who is the administrative

agent of the school committee. It is a cardinal principle of the law of construction of statutes that courts do not ordinarily broaden the language of a statute by judicial interpretation unless such interpretation is necessary to carry into effect its clear intendment.

In this connection it is also to be noted that in other prior statutes relative to education, the term teacher as defined does not automatically include a superintendent. Where it is intended to include superintendents it is done by express language. The following are examples of such definitions. General laws 1938, chapter 180, §15, reads as follows:

> "The term 'teacher,' as used in this chapter, shall be deemed to include every person employed as a teacher, supervisor, principal or superintendent or assistant superintendent, of schools, whether employed in schools supported in whole or in part by public funds, or in colleges, or in public institutions or in the state department of education."

In public laws 1947, chap. 1887, art. IX, part I, sec. 2, we find the following language:

> "* * * The term 'teacher' as used in this article shall include every person employed by any city or town as a teacher, supervisor, principal, assistant principal, superintendent, or assistant superintendent in any public school in the state who is required by law to hold a certificate of qualification issued by or under the authority of the director of education. This appropriation shall be known as the annual state salary grant for teachers."

See also P. L. 1948, chap. 2131, sec. 2.

Again in P. L. 1948, chap. 2101, providing for a state-wide retirement system for teachers, section 1, subdivision (2) defines "teacher" as follows:

> " 'Teacher' shall mean a person required to hold a certificate of qualification issued by or under the authority of the director of education and who is engaged in teaching as his principal occupation and is regularly employed as a teacher in the public schools of any

city or town in the state. Said term shall include a person employed as a teacher, supervisor, principal, assistant principal, superintendent or assistant superintendent of schools."

That a superintendent as such does not have a guaranteed tenure would appear from the language of G. L. 1938, chap. 178, §§5 and 6, relating to superintendency unions which read as follows:

"§5. The school committee of 2 or more towns, in which the aggregate number of schools shall not be more than 60, may by vote unite for the purpose of the employment of a superintendent of the schools of said several towns.

§6. The school committees of the respective towns voting therefor, as prescribed in the preceding section, shall form a joint committee, for the purpose of this chapter; said joint committee shall be the agents of each town comprising such union. Said school committees shall meet annually in joint convention at a place and time agreed upon by the chairmen of the several school committees, and shall organize by the choice of a chairman and secretary. *They shall choose by ballot a superintendent of schools,* fix his salary and apportion the amount thereof to be paid by each of the towns, approximately according to the next preceding school census in said town. Such union shall not be dissolved because the number of schools shall have increased beyond the number of 60, nor, for any reason, for the period of 3 years from the date of the formation of such union, except by concurrent votes of the school committees of a majority of the towns constituting such union." (italics ours)

It therefore appears from §6 that a superintendent is elected annually at the joint meeting of the school committees of the towns uniting to employ a superintendent of their schools. Such a superintendent clearly does not have "tenure" because he is subject to the hazards of the prescribed annual election. That the schools of several towns in this state are presently united and operating under the provisions of §§5 and 6 of chap. 178 as to a superin-

tendent for their schools indicates an acceptance by the several school committees and the commissioner of the continued effectiveness of those provisions which thus exclude a superintendent from tenure thereunder.

A superintendent in this state is not a teacher in the ordinary usage of that term. His duties are not similar. As defined in G. L. 1938, chap. 178, §10, he is "the chief administrative agent of the school committee." As such he would not come within the provisions of the teacher's tenure act unless that legislative intent is clearly and expressly stated therein. This conclusion is amply supported by authorities in other jurisdictions. The case of *Biehn* v. *Tess,* 340 Ill. App. 140, involved the dismissal of a superintendent-principal. In its decision reversing an order for a temporary injunction on the ground that plaintiff's amended claim did not present a case for equitable relief, the court quoted with approval from *Eelkema* v. *Board of Education,* 215 Minn. 590, where in discussing the Minnesota tenure law that court held: "The character of the services of a superintendent of schools to the district and of his relations to the board is such that it should require a clear declaration of legislative intent to bring him within the continuous employment effected by the tenure act."

In the *Eelkema* case, *supra,* the court also held that the superintendent of schools employed by the board of education of the independent school district of Duluth was not within the protection of the Minnesota teacher's tenure act and concluded that the board was within its powers in not continuing his employment although he had served as superintendent for seven years. The court said at page 594: "The tenure act, in defining 'teacher' for the purpose of providing continuous service after the probationary period, also enumerates its coverage starting with 'principal.' It does not use the designation 'superintendent of schools.' If the legislature *had intended to include* that position within the definition of 'teacher' for the purpose of tenure, it

naturally would have used that designation and would have placed it ahead of 'principal' in the list of positions covered." (italics ours)

It should be noted particularly that in all the Rhode Island statutes quoted above, passed either before or after the teacher's tenure act, where the term "teacher" is intended to include a superintendent it is done by express language. Clearly the legislature knew how to include a superintendent within the meaning of "teacher" when such result was intended. However, in the teacher's tenure act a superintendent is not specifically included within the definition of "teacher." It is a reasonable conclusion therefore that such failure to include a superintendent *eo nomine* was intentional and not accidental. This may well be because of the great differences in the duties and functions of a teacher and a superintendent. Although both are required to hold certificates from the state board of education, such certificates are not identical and are not intended to cover the same teaching activities. Further the qualifications and requirements therefor are essentially different.

In our opinion superintendent Snell is not entitled as a superintendent to tenure under the teacher's tenure act and therefore he is not a person aggrieved by the decision of the committee thereunder. It follows that neither the commissioner nor the board had any jurisdiction under the act to hear or decide his appeal from the decision of the committee.

The respondents have filed in this court a motion to dismiss the instant petition on the grounds that the committee does not have the capacity to petition for the writ; that the committee has no interest in its decision and is not aggrieved by a reversal thereof; and that the committee has no right to question the ruling of the board.

We cannot agree with these contentions. By G. L. 1938, chap. 178, §22, "the entire care, control, and management of all the public school interests of the several towns, shall be

vested in the school committee of the several towns * * *."
The right of school authorities to sue is often implied from
the statutes defining their powers and duties. In the instant
case the committee was actually made a party through the
purported appeal of the superintendent to the commission-
er. Under the broad powers conferred upon the committee
by the above statute, we are of the opinion that it was a
necessary party and had a right to defend its jurisdiction.
To deny this right would result in an absurdity. It would
allow the board's decision to stand in a matter in which we
have held that the board lacked jurisdiction. It would
foist upon the committee a superintendent whom it had
dismissed after notice and hearing and whose appeal to the
commissioner we have held to be ineffective in law. What-
ever rights of contract, if any, may exist in favor of the
superintendent, must be determined in other proceedings.
The motion to dismiss is denied.

The petition for a writ of certiorari is granted, the deci-
sions of the commissioner of education and of the state
board of education are quashed, and the records heretofore
certified to this court are ordered returned to the respondent
board with our decision endorsed thereon.

*Louis J. Barry,* for petitioners.

*William E. Powers,* Atty. Gen., *Archie Smith,* Ass't Atty.
Gen., for respondents.