Patricia CASEY and Lochiel MacDonald

v.

NEWPORT SCHOOL COMMITTEE, City of Newport, Joel Johnson, in his capacity as the Treasurer of the City of Newport, and Dale Henessey, alias, individually and in his capacity as a Newport School Teacher.

C.A. No. 97–297–T.

United States District Court, D. Rhode Island.

Aug. 19, 1998.

Bruce P. Gladstein, Providence, RI, for Plaintiffs.

Neil Patrick Galvin, Palumbo, Galvin & Boyle, Middletown, RI, Marc DeSisto, Kathleen M. Powers, DeSisto Law Offices, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

The defendants have moved for summary judgment with respect to claims that they are liable, under 42 U.S.C. § 1983, for an alleged violation of Lochiel MacDonald's ("MacDonald") constitutional due process rights and for a variety of state law torts based upon both a disciplinary complaint filed against MacDonald by his high school science teacher and the school's response to that complaint.

Because the plaintiffs have failed to establish any basis for their federal due process claim, the motion for summary judgment is granted with respect to that claim; and, all of the related state law claims are dismissed without prejudice.

### Factual Background

During the 1995–96 school year, MacDonald was a freshman at Rogers High School ("Rogers") in Newport, Rhode Island. On a number of occasions, he was disciplined for engaging in disruptive behavior in a science class taught by Dale Henessey ("Henessey") and in a number of other classes as well.

On May 16, 1997, Henessey sent a report to Barry Coofer, the dean of discipline, alleging that MacDonald had threatened him. Pursuant to Rogers' "zero tolerance" policy of automatically referring reports of possible criminal acts to the police, Coofer reported the alleged threats to authorities. The Newport police investigated and were unable to find sufficient evidence to prosecute. Accordingly, no charges ever were filed against MacDonald.

. However, after meeting with MacDonald's mother, school officials removed MacDonald from Henessey's class for the remaining five weeks of the school year. During that period, he was individually taught by Dean Coofer, a former science teacher. At the time of his removal, MacDonald's science grade was so low that it would have been virtually impossible for him to achieve a passing grade regardless of his performance during the remainder of the school year and, in fact, he failed the course.

MacDonald's seven-count complaint asserts claims against Henessey, the City of Newport and the Newport School Committee ("School Committee") for alleged violations of MacDonald's constitutional procedural due process rights. In addition, it asserts state law tort claims for intentional infliction of emotional distress, malicious prosecution and negligent supervision.

### The Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it bears direct relation to the legal elements of a claim or defense to the extent that it may affect the outcome of the case. *Id.* In determining whether a genuine dispute of material fact exists, it is incumbent upon the Court to view the evidence in the light most favorable to the nonmovant and to draw all reasonable inferences in that party's favor. *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992).

In a case such as this, where the nonmovant bears the ultimate burden of proof on the claims at which the motion is directed, the movant may satisfy its burden at the summary judgment stage by producing evidence that negates an essential element of the nonmovant's case or by demonstrating an absence of evidence in the record on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *De-Novellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997). The burden then shifts to the

nonmovant, who must demonstrate that there is a genuine issue of material fact that requires trial. *Dow v. United Bhd. of Carpenters and Joiners of Am.,* 1 F.3d 56, 58 (1st Cir.1993). The nonmovant is required to show that there is a factual dispute with respect to each issue which that party must prove in order to win at trial. *DeNovellis,* 124 F.3d at 306. The test is "whether, as to each essential element [of the nonmovant's claim or defense], there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511).

### Discussion

#### I. *The § 1983 Claims*

The only federal claims being made are the alleged procedural due process violations asserted, pursuant to 42 U.S.C. § 1983, against the City, the School Committee and Henessey. Those claims will be addressed in turn.

#### A. *Municipal Liability*

It is hornbook law that a municipality cannot be held liable under § 1983, under the theory of *respondeat superior,* for acts committed by its employees or agents. *Monell v. Dept. of Soc. Servs. of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A municipality can be held vicariously liable only if the constitutional violation at issue results from a policy, ordinance, regulation or decision officially adopted or promulgated by the municipality's authorized officers or from an established custom or practice of the municipality. *Id.* at 690–91, 98 S.Ct. at 2035–36.

■ A policy or official decision may consist of action taken by an official having decision-making authority with respect to that action so that the "acts may fairly be said to be those of the municipality." *Silva v. Worden,* 130 F.3d 26, 31 (1st Cir.1997) (quoting *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)). Alternatively, conduct may be held to constitute a custom or practice, even though it never was officially approved by the municipality, if it "is so widespread as to have the force of law," *Bryan County Comm'rs,* 520 U.S. at ——, 117 S.Ct. at 1388, or it is "so well-settled and widespread that the policy making officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989).

■ In this case, the record is utterly devoid of any allegations or evidence that the complaint filed by Henessey or MacDonald's removal from Henessey's science class resulted from any official policy or any custom or practice of either the City or the School Committee. MacDonald fails even to allege that Henessey had authority to act as a decision maker on behalf of either body. Nor has MacDonald presented any evidence as to who made the decision to remove him from Henessey's class or whether that person was an "official[ ]" whose acts may fairly be said to be those of the municipality." *Silva,* 130 F.3d at 31 (quoting *Bryan County Comm'rs,* 520 U.S. at ——, 117 S.Ct. at 1388).

Evidence regarding the existence of a custom or practice is similarly lacking. The plaintiffs are unable to cite even one similar incident from which a "well-settled and widespread" custom or practice could be inferred. *Bordanaro,* 871 F.2d at 1156.

■ In addition, it appears that the School Committee is not a proper party to this action. Fed.R.Civ.P. 17(b) provides that a party's "capacity to sue or be sued shall be determined by the law of the state in which the district court is held" and the Rhode Island Supreme Court has held that, because a school committee is a department of the municipality, the municipality itself is the proper party defendant, not the school committee. *Peters v. Jim Walter Door Sales of Tampa, Inc.,* 525 A.2d 46, 47 (R.I.1987).

#### B. *The Property or Liberty Interest Requirement*

■ In order to succeed on his procedural due process claim, MacDonald must establish that he has been deprived of a constitutional-

ly cognizable property or liberty interest. A constitutionally protected property interest is not created unless there is "a legitimate claim of entitlement" to the benefit in question. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). An "abstract need or desire" for the benefit or the "unilateral expectation" of receiving it are insufficient. *Id.*

■ Whether a property interest is constitutionally protected is determined by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). To qualify it must be "recognized by state statute or a legal contract, express or implied, between the state agency and the individual." *Marrero–Garcia v. Irizarry,* 33 F.3d 117, 121 (1st Cir.1994).

■ MacDonald contends that his removal from Henessey's class deprived him of his right to a public education. It cannot be disputed that, under Rhode Island law, MacDonald was legally entitled to a public education. *See City of Pawtucket v. Sundlun,* 662 A.2d 40, 57 (R.I.1995); *Exeter–West Greenwich Regional Sch. Dist. v. Exeter–West Greenwich Teachers' Assoc.,* 489 A.2d 1010, 1016 (R.I.1985); *see also Goss v. Lopez,* 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975). However, absent a state law provision to the contrary, that right does not include entitlement to particular aspects of the educational program. *See Boynton v. Casey,* 543 F.Supp. 995, 1001 (D.Me.1982) (entitlement to public education "does not necessarily encompass every facet of the educational program"); *see also Hebert v. Ventetuolo,* 638 F.2d 5, 6 (1st Cir.1981) (right to education does not include right to participate in interscholastic activities); *Arundar v. DeKalb County Sch. Dist.,* 620 F.2d 493, 494 (5th Cir.1980) (right to education does not include right to specialized curriculum). That is especially true when a student is placed in an alternative program for disciplinary reasons. *See Nevares v. San Marcos Consol. Indep. Sch. Dist.,* 111 F.3d 25, 26 (5th Cir.1997).

■ Here, MacDonald was not deprived of his right to a public education. He continued to attend all of his classes except science.

Moreover, he continued to receive instruction in science from Dean Coofer, a qualified science teacher. Finally, the transfer was effective only for the last five weeks of the school year. Thus, the alleged deprivation is a far cry from the "total exclusion from the educational process for more than a trivial period" referred to in *Goss v. Lopez,* 419 U.S. at 576, 95 S.Ct. at 737.

■ MacDonald also asserts that Henessey's report was false and deprived him of a liberty interest in his good name. However, it is well established that there is no constitutionally protected liberty interest in reputation alone and "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). The due process clause encompasses injury to reputation only when it consists of "unusually serious harm" and is evidenced by some adverse effect on another legally protected right or status. *Beitzell v. Jeffrey,* 643 F.2d 870, 878 (1st Cir.1981); *see also Brennan v. Hendrigan,* 888 F.2d 189, 195 (1st Cir.1989) (citing *Paul v. Davis,* 424 U.S. 693, 709–10, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976)).

■ Here, assuming *arguendo,* that Henessey's statements were false and that MacDonald's reputation was injured, his constitutionally protected liberty interest was not implicated because there is no indication that he suffered the requisite degree of "unusually serious harm" or that some other legally protected right or status was affected.

### C. Due Process

■ The absence of any constitutionally protected property or liberty interest is dispositive of MacDonald's due process claim. However, it also should be noted that MacDonald apparently received all of the process that was due him in connection with his removal from Henessey's class.

It is undisputed that Rogers High School had a formal grievance procedure available to students who wished to contest disciplinary action against them. The policy required that a student "be told of the charges, given an explanation of the evidence, and provided

an opportunity to present an explanation of what happened" before disciplinary action was taken. Moreover, it allowed the student to file a grievance with the assistant principal and to appeal an adverse decision to the principal. It also provided for further appeals to the Superintendent of Schools, the School Committee and, finally, the State Commissioner of Education. That procedure satisfies constitutional requirements. *See Goss,* 419 U.S. at 581–84, 95 S.Ct. at 740–41.

It also is undisputed that the plaintiffs availed themselves of that procedure. MacDonald and his mother met with school officials, were informed that he would be removed from Henessey's science class and filed a grievance. Although it is not clear what action was taken with respect to the grievance, MacDonald has provided no evidence that school officials failed to adhere to the policy. He simply asserts, in his complaint, that no "hearing" was conducted.

In short, the defendants are entitled to summary judgment with respect to Mac-Donald's federal claims.

## II. *The State Law Claims*

The only remaining issue is whether the related state law claims over which this Court has only supplemental jurisdiction should be dismissed. Although this Court has considerable discretion in making that determination, the general rule expressed in *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), is that:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

In this case there is no reason for departing from that rule.

### Conclusion

For all of the foregoing reasons, the defendants' motions for summary judgment are granted with respects to Counts VI and VII and the remaining counts of the complaint are dismissed without prejudice to being filed in state court.

IT IS SO ORDERED,